UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION** at **LEXINGTON**


RICHARD A. CROSBY, PhD,            )
                                   )
    Plaintiff,              )     Civil Action 15-cv-276-JMH
                                   )
vs.                                )
                                   )
                                   )
DR. ELI CAPILOUTO,                 )     **MEMORANDUM OPINION AND ORDER**
TIMOTHY TRACY, PhD,                )
WILLIAM THRO,                      )
WAYNE T. SANDERSON, PhD, CIH,      )
TERRY ALLEN,                       )
    Each in individual and  )
    Personal capacity       )
                                   )
     Defendants.            )
                                   )

**       **       **       **       **

## I.   Introduction

This matter is before the Court upon several motions, including: Defendants' motion to dismiss; Plaintiff's motion to file an oversized memorandum; and Plaintiff's motion for a hearing. The previous defendant in this matter, the University of Kentucky ("the University"), moved to dismiss Plaintiff's original complaint for lack of jurisdiction and failure to state a claim under which relief could be granted.   That motion, as well as Plaintiff's motion for a preliminary injunction, which was carried over from state court, will be denied as moot, because the

1

University of Kentucky was terminated as a defendant on October 13, 2015, when Plaintiff filed his Verified Amended and Substituted Complaint, naming the current defendants and omitting the University from the complaint. Plaintiff's motion to file an oversized memorandum will be granted; Plaintiff's motion for a hearing will be denied as moot; and Defendants' motion to dismiss will be granted.

## II.  Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's complaint. The court views the complaint in the light most favorable to the plaintiff and "must accept as true well-pleaded facts set forth in the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (internal quotation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

## III. Factual Background

The facts of this case have been set forth in great detail in Plaintiff's 42-page complaint and 56-page memorandum. The following is a synopsis of the salient facts:

Plaintiff Richard A. Crosby, PhD, has been a tenured faculty member in the University of Kentucky College of Public Health since 2004. Plaintiff has received numerous impressive awards and accolades throughout his distinguished academic career. For example, he secured a $2.86 million grant for the College of Public Health from the National Institute of Health, he was named an Associate Research Fellow by the Kinsey Institute, he authored textbooks and dozens of scholarly articles, and he received good reviews from his students and superiors at the University. [DE 9, Ver. Am. and Sub. Compl., ¶¶ 12-23.]

Plaintiff was appointed to a four-year term as Chairman of the Department of Health Behavior in 2006, reappointed in 2010, and reappointed again in 2014. The 2014 appointment would have expired in 2018; however, in July 2015, the Dean of the College, Wayne Sanderson, PhD (a named defendant in this case), acting on the advice of the University's Office of Institutional Equity and Equal Opportunity (OIEEO) and Dr. Timothy Tracy, Provost (another named defendant), removed Plaintiff from his position as Chairman. [DE 9, Ver. Am. and Sub. Compl., Ex. 4, 5, and 6.] This removal came after an investigation of accusations that Plaintiff acted inappropriately in his role as department chair. Accusations

included that Plaintiff suggested an Associate Dean obtained her
position "because she is a woman, genitalia," and that Plaintiff
was prone to angry and emotional outbursts, retaliation, scolding,
and yelling.  Some of the accusations reflected that the accusers
were afraid of Plaintiff and more than one complaint described him
as "volatile" or "explosive." [DE 9, Ver. Am. and Sub. Compl., Ex.
4.]  Plaintiff has categorically denied these accusations.

Plaintiff complains he was not afforded the procedural due
process he was entitled to pursuant to various University rules
and regulations, as well as Kentucky state law. On June 3, 2015,
Defendant Sanderson placed Plaintiff on administrative leave with
pay and advised him that the OIEEO had opened an investigation
regarding accusations of Plaintiff's inappropriate behavior.  On
June 23, 2015, the OIEEO, in a letter signed by Defendant Allen,
informed Defendant Tracy and counsel for the University that it
had completed its investigation of Plaintiff, which included a
brief interview of Plaintiff, and that based on the investigation,

> the Office of Institutional Equity and Equal
> Opportunity finds Richard A. Crosby's behavior
> as Chair of the Department of Health Behavior
> in violation of the University's Governing
> Regulation Ethical Principles:
>
> - Mutual Respect and human dignity
> - Personal and institutional
>   responsibility and accountability
> - Exhibits personal integrity, honesty,
>   and responsibility in all actions

- Provides an environment of mutual respect, impartiality, and collaboration

[DE 9, Ver. Am. and Sub. Compl., Ex. 4.]

In this letter, the OIEEO recommended Plaintiff be removed from his position as department chair. The letter suggested finding a beneficial working arrangement for Plaintiff, as well as "professional staff development for all personnel of the College of Public Health" to help identify, prevent, and remediate inappropriate behavior. There was no mention of any change in Plaintiff's status as a tenured faculty member. Defendant Tracy wrote to Defendant Sanderson on July 2, 2015, authorizing him to take the actions suggested in the OIEEO letter. By letter dated July 7, 2015, Defendant Sanderson informed Plaintiff he was ending his administrative leave (so that Plaintiff could return to campus) but also ending his appointment as department chair, effective immediately. Plaintiff was provided with a new assistant and required to move his office to the Gerontology Department (though his faculty appointment remained in the Department of Health Behavior). Plaintiff, through counsel, notified the University that he was demanding a hearing pursuant to "Governing Regulation XX" on July 13, 2105. Counsel for the University responded on July 15, 2015, explaining that "Governing Regulation XX" was a proposed regulation upon which Plaintiff could not base his request for an appeal; however, Plaintiff could base his request on

Governing Regulation I(F). Accordingly, Counsel for the University stated that because Provost Tracy had directed the action against Plaintiff, Plaintiff should direct his appeal to the President of the University, Eli Capilouto, PhD, another defendant in this case.

Plaintiff's counsel responded to University counsel's letter, stating Plaintiff's dissatisfaction with the appeals process, citing his preference for the process in proposed Governing Regulation XX, and threatening that "[i]f the President does not reverse the decision, Dr. Crosby will proceed to a court of competent jurisdiction to secure his rights to due process of law so that he may protect his property." [DE 9, Ver. Am. and Sub. Compl., Ex. 11.] The record reflects Plaintiff filed this lawsuit in state court on September 3, 2015, the University was served on September 9, 2015, and on September 23, 2015, University counsel advised Plaintiff's lawyer that the President suspended his investigation of Plaintiff's appeal due to the pending litigation.

## IV. Discussion

Plaintiff alleges three causes of action: (1) a cause of action pursuant to 42 U.S.C. §§ 1983, 1988 for violation of his due process rights; (2) violations of the guarantees of due process pursuant to the Kentucky Constitution; and (3) breach of contract. All three causes of action are brought against the defendants in their "individual and personal capacities" and not against the

University or the defendants in their official capacities. All three causes have no basis in law or fact and cannot withstand Defendants' Rule 12(b)(6) motion.

## A. Plaintiff has no protect property interest in the position of Department Chair

Plaintiff asserts he had a protected property interest in his position as department chair that could is protected by procedural due process rights. Property interests "are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law—rule or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In that case, the Supreme Court was clear that a person must have a "legitimate claim of entitlement" to the property interest they seek to be protected procedural due process; a "desire" or "abstract concern" for it is insufficient. *Id.* at 577-78. For the reasons stated below, the Court holds that there was no state statute, regulation, University regulation, rule, or policy which created a protected property interest in Plaintiff's position as department chair. While Dr. Crosby understandably had a desire to continue in his position as department chair, he cannot prove he had a protected right to it.

Defendants do not contest that Plaintiff is a tenured professor and that tenure at the University comes with certain

rights and protections. However, Defendants assert, and the Court agrees, that the basis of Plaintiff's claims is "an erroneous conflation of Dr. Crosby's capacity as a tenured faculty member-which is unchanged-and his removal from the administrative appointment as Chair of the Department of Health Behavior." [Defs.' Reply in Supp. Mot. to Dismiss, p. 1, DE 20.]

Plaintiff's position as a tenured faculty member is distinct from his administrative position as a department chair. This point is so obvious it seems a waste of paper to elaborate further, yet it is clear the Court must provide this analysis for Plaintiff's understanding.

Plaintiff admits he was a tenured faculty member for many years prior to becoming department chair. The position of tenured faculty member obviously exists independently from the position of department chair, and Plaintiff acknowledges he "did not cease being a faculty member when he became Chairman of the Department of Health Behavior." [Pl.'s Mem., p. 28, DE 16]. The Court would add that Plaintiff did not stop being a tenured faculty member when he was removed from the department chair position, either.

Plaintiff seems to argue that the University of Kentucky Governing Regulation Part VII(A)(6)(a)[1] created a protected

---

[1]Neither party attached the full text of the Governing Regulations discussed herein as exhibits to their pleadings, motions, or memoranda. The content of the Governing Regulations cited herein is not in dispute by the parties, although the application of them is. The Court takes judicial notice of the content of University of Kentucky's Governing Regulations in effect at the

property interest akin to a faculty position because it mandates that faculty departments "shall consist of a chair" who must be a member of the faculty of the school. Plaintiff makes the implausible analytical leap that "[b]y the terms created by the University, department chairs are faculty members. As such, they are not at-will employees." [Pl.'s Mem., p. 28, DE 16] Whether or not the employee is at-will does not stem from his administrative appointment as a department chair—which is not a job someone can independently hold at the University without also being a faculty member—but originates from that person's status as a faculty member. A University employee can be a tenured faculty member before, during, and after serving in an administrative role such as department chair, just as Plaintiff was in this case.

Plaintiff claims the University Governing Regulation, Part VIII(A)(4)(a), supports his argument that he had a protected property interest in the position of department chair akin to a tenured position, because the Governing Regulation provides, "[t]he term of a department chair's appointment shall be four (4) years, except in the Colleges of Agriculture, Dentistry, Medicine, Nursing, and Pharmacy where it shall be six (6) years." Plaintiff

---

time Plaintiff was removed from his position as department chair, which are available at http://www.uky.edu/regs/gr.htm and archives of the same. Pursuant to Fed. R. Ev. 201, "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Furthermore, "The court may take judicial notice at any stage of the proceeding."

alleges this subpart prohibits the University from removing him from this position prior to the expiration of any of his four year terms of service. However, this section of the Governing Regulations does not speak to early removal—or even a faculty member's early resignation—from the position of department chair. In fact, Part VIII(A)(4)(a) of the Governing Regulation continues:

> Ordinarily, a department faculty member will be asked to serve as chair for only one (1) term. A chair may be reappointed, however, when the faculty advisory committee appointed to review the work of the department (AR 1:4) finds that the particular circumstances and needs of the department make such a reappointment desirable. Reappointment beyond the second term may occur under exceptional circumstances when it is deemed to be in the best interests of the University. This practice may vary from discipline to discipline.

Implicit in this portion of Part VIII(A)(4)(a) that each department has discretion in meeting the "best interests of the University." The regulation allows that "the practice [of reappointing department chairs] may vary" without any other mandate. This regulation focuses on the maximum time a faculty member should serve as department chair, but is completely silent on the issue of early removal or resignation. The Court is not persuaded that this Governing Regulation created a protected property or liberty interest in the position of department chair that could not be changed without prior due process.

Plaintiff also argues KRS 164.225 mandates he could not be removed from his position except by vote of the University's Board of Trustees [DE 9, Ver. Am. and Sub. Compl., ¶¶ 34 and 45]. KRS 164.225 states:

> Anything in any statutes of the Commonwealth to the contrary notwithstanding, the power over and control of appointments, qualifications, salaries, and compensation payable out of the State Treasury or otherwise, promotions and official relations of all employees of the University of Kentucky, as provided in KRS 164.220, and, subject to any restrictions imposed by general law, the retirement ages and benefits of such employees shall be under the exclusive jurisdiction of the board of trustees of the University of Kentucky, which shall be an independent agency and instrumentality of the Commonwealth. No relative of a board of trustee member shall be employed by the university.

This statute does not require the Board of Trustees to vote on every appointment or removal across the entire University, nor does it prohibit the Board from delegating its powers and duties to others in the University. In fact, the University's Governing Regulation, Part II(A)(1) specifically permits the Board of Trustees to delegate

> certain responsibilities to the President, the University Senate, the Staff Senate, the Student Government Association, the Graduate Faculty, and the faculties of educational units in order to provide for the responsible and efficient administration of the University and the accomplishment of its goals.

The Court was unable to find any Kentucky case law remotely suggesting that a state university's Board of Trustees is solely charged with appointing or removing a department chair, and Plaintiff has not cited to any such authority.

The Sixth Circuit has held "that tenured university professors [do] not have a constitutionally protected property interest in administrative posts." *Stringfield v. Graham*, 212 F. App'x 530, 538 (6th Cir. 2007). In *Stringfield*, the plaintiff (Yvonne Stringfield, a tenured professor) alleged that the individually named defendant ("Graham") "violated her clearly established procedural due process right to notice and an opportunity to be heard before she was removed from her position as director of the baccalaureate nursing program, in which she says she had a property interest." *Id*. at 536. Similar to the plaintiff in this case, Stringfield argued "that she held a property interest in the directorship through her status as a tenured faculty member." *Stringfield v. Graham*, 212 F. App'x 530, 538 (6th Cir. 2007). The Sixth Circuit disagreed, but ultimately remanded the case for additional fact-finding because, unlike Dr. Crosby, Stringfield had an "ambiguously worded" "notice of appointment and agreement of employment" which intermingled her faculty position and her administrative directorship appointments. *Id*. The plaintiff in this case does not allege any such agreement, other than his very tenuous "*de facto* contract" argument addressed

below.  No discovery or further fact-finding is necessary in this case; reading the facts in the light most favorable to Plaintiff, it is clear there is no set of facts upon which he can rest his claims that he had a protected property interest in his administrative appointment to department chair.[2]

The Court is similarly not persuaded that the University Senate Rules confer upon Plaintiff a protected property interest in his position as department chair.  The University Senate Rules, Section VII, upon which Plaintiff partly bases his claims, is entitled, "Code of Faculty Responsibilities."  This section sets forth general responsibilities of faculty members, such as "[r]espect the rights of all campus members to pursue their academic and administrative activities."  [DE 9, Ver. Am. and Sub. Compl., ¶¶ 58-60, Ex. 1.]  This section refers to faculty members, in their position as faculty members, and does not refer to a situation in which complaints may be brought against a faculty members in their capacity as administrative personnel.  The letter

---

[2] The Court notes that Plaintiff claims he was paid an additional $5,000 per year for his service as a department chair, that he lost this additional income when he was removed from the position, and seems to argue that this comprises part of his protected property interest.  The University, however, vehemently disputes this claim, and insists Plaintiff's pay was not reduced even though he was removed from the position.  The Court finds it odd that this fact is so hotly contested between the parties, as the amount Plaintiff was paid after his removal as department chair should be easily verified by both parties.  The Court holds, however, that this dispute is immaterial to the outcome of the case, because and for the reasons stated herein, Defendant did not have a protected property interest in the administrative position nor any additional pay that may have been associated with it.

finding Dr. Crosby in violation of the University's Governing Regulation Ethical Principles states:

> Based on a thorough investigation, the Office of Institutional Equity and Equal Opportunity finds **Richard A. Crosby's behavior as Chair of the Department of Health Behavior** in violation of the University's Governing Regulation Ethical Principles:
>
> - Mutual respect and human dignity
> - Personal and institutional responsibility and accountability
> - Exhibits personal integrity, honesty, and responsibility in all actions
> - Provides an environment of mutual respect, impartiality, and collaboration
>
> As a result, the Office of Institutional Equity and Equal Opportunity recommends removal of Dr. Crosby from the position of Chair of the Department of Health Behavior.

[DE 9, Ver. Am. and Sub. Compl., Ex. 4](emphasis added).

The Court recognizes some of the accusations against Plaintiff were vague and could have been interpreted as a complaint about Plaintiff in his capacity as a tenured faculty member; for example, the complaints that he is "Very condescending" and "Inconsistent." The OIEEO's letter clearly states, however, that it investigated and had findings related only to Plaintiff's "behavior as Chair of the Department of Health Behavior." The University Senate Rules Section VII do not apply to actions against

a faculty member in his administrative capacity; in fact, they do not even mention it.[3]

Finally, Plaintiff argues he is entitled to relief pursuant to proposed Governing Regulation XX [DE 9, Ver. Am. and Sub. Compl., ¶¶ 58-60, Ex. 2]. Plaintiff cannot rely on this document because it is clearly marked "draft" and has no "enacted date." The University investigated the complaints against Plaintiff based on the Governing Regulations in effect at that time. The Court's understanding is that Governing Regulation XX had not been adopted by that time, and, in fact, has never been adopted by the Board of Trustees.

For the reasons stated above and in sections B and C, below, the Court will grant Defendants' motion to dismiss Count I of the Verified Amended Complaint.

**B. Defendants are entitled to qualified immunity**

It appears Plaintiff crafted his Amended Complaint to exclude the University and Defendants in the official capacities in an effort to circumvent sovereign immunity and hold Defendants liable individually. There are no facts, however, to support holding

---

[3] In contrast, the Court notes the Governing Regulations differentiate the rights and responsibilities a faculty member may be subject to in his capacity as a faculty member versus in his role as administrative personnel. For example, Part X(B)(1)(f)-(h) requires tenured faculty members to give several months' notice of his or her resignation; however, "[a]dministrative personnel who hold academic rank are subject to the foregoing regulations *in their capacity as faculty members.*" (emphasis added)

Defendants liable in their individual capacities. "The doctrine of qualified immunity shields government officials performing discretionary functions from civil damages liability as long as their actions are reasonable in light of the legal rules that were clearly established at the time of their conduct." *Flatford v. City of Monroe*, 17 F.3d 162, 166 (6th Cir. 1994). As discussed above, Sixth Circuit case law was well-established in June and July 2015 that Plaintiff had no protected property interest in his administrative appointment to the position of department chair. Accordingly, this Court "conclude[s] that reasonably competent university administrators could have decided that [Plaintiff] was removable, and thus had no property interest in his [position as Chairman]." *Garvie v. Jackson*, 845 F.2d 647, 652 (6th Cir. 1988)(holding that under Tennessee law a university department head has no legitimate claim of entitlement to his position; thus, provost and dean were entitled to qualified immunity on the claim that the plaintiff's removal without a hearing violated due process.). For these reasons, the Court finds the defendants entitled to qualified immunity on Plaintiff's claims of deprivation of a property interest without due process.

**C. Plaintiff has not alleged sufficient facts which would constitute violation of a protected liberty interest**

Plaintiff claims he suffered a deprivation of his liberty interest in his good name and reputation because his removal as

department chair was stigmatizing, has limited his opportunities at other institutions, and because Defendant Sanderson held a meeting during which he "publicly informed" the "College of Public Health faculty and others" of the accusations against Plaintiff, and stated if Plaintiff took any retaliatory actions, those should be reported to Defendant Sanderson.

The Sixth Circuit "has identified five factors that a plaintiff must show in order to establish that he was deprived of a liberty interest and entitled to a name-clearing hearing." *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002). Citing *Brown v. City of Niota,* 214 F.3d 718, 722–23 (6th Cir.2000), the Court set forth the factors:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment.... Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.... Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) (citing *Brown v. City of Niota,* 214 F.3d 718, 722–23 (6th Cir.2000)(omissions in original)). The Sixth Circuit held that "once a plaintiff has established the existence of all five elements, he is entitled to a name-clearing hearing if he requests one. It is the denial of

the name-clearing hearing that causes the deprivation of the liberty interest without due process." *Id.* (internal citations omitted).

Plaintiff does not allege he was terminated from his employment, thus, he does not meet the first factor of the test. Even if the removal of Plaintiff as department chair could be construed as termination from employment—which it clearly is not—Plaintiff does not allege he requested and was denied a name-clearing hearing. The Sixth Circuit has "consistently held that a failure of the plaintiff to request a name-clearing hearing bars due process claims for violations of a liberty interest." *Stringfield v. Graham*, 212 F. App'x 530, 540 (6th Cir. 2007). "[A] letter sent by the plaintiff's counsel to defendants alleging that they had violated plaintiff's due process rights did not amount to a request for a name-clearing hearing where it was "insufficient to alert [the defendants] that [the plaintiff] was complaining of a lack of due process in connection with a liberty interest as opposed to a lack of due process in connection with his claimed property interest." *Id.* (quoting *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir.2002)). Although Plaintiff's demand for an evidentiary hearing mentions "libel and slander," he repeatedly mentions deprivation of property without due process and never once mentions deprivation of any liberty interest or requests a

name-clearing hearing. [DE 9, Ver. Am. and Sub. Compl., Ex. 8 and 9.]

For these reasons, the Court holds defendant has not alleged sufficient facts to withstand Defendants' motion to dismiss his claim for deprivation of his liberty interest.

**D. There is no cognizable cause of action for damages pursuant to the due process clause of the Kentucky Constitution**

The Courts of the Eastern District of Kentucky have previously held that there is no authority known to it pursuant to which a plaintiff may recover money damages from defendants named in their individual capacities for a violation of the Kentucky Constitution. *Clark v. Kentucky*, 229 F.Supp.2nd 718, 727 (E.D.Ky. 2002). There, the plaintiff also sought damages against the defendants in their official capacities and the Commonwealth of Kentucky. The Court noted "plaintiff does not cite any authority for the proposition that he may seek money damages from the Commonwealth of Kentucky for a violation of his rights as established by the Kentucky Constitution, and the Court can find none[]" and likewise, "the constitutional claims against the individual defendants in their official capacities must also be dismissed, as '[t]he absolute immunity from suit afforded to the state also extends to public officials sued in their representative (official) capacities, when the state is the real party against which relief in such cases is sought.'" *Id.*, citing *Yanero v.*

*Daviz*, 65 S.W.3rd 510, 518 (Ky. 2001). The Kentucky Supreme Court has also held that the statute which authorizes a private right of action for damages for any person injured by the violation of a statute, KRS 446.070, does not extend to claimed violations of the Kentucky Constitution. *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529 (Ky. 2011).

Accordingly, the Court finds that Kentucky law does not recognize a private cause of action for damages for violations of the Kentucky Constitution. The Court will grant Defendants' motion to dismiss Count II of Plaintiff's Amended Complaint.

### E. There was no contract, *de facto* or otherwise, between the parties regarding the position of Department Chair

Plaintiff has not alleged the individually named defendants to this lawsuit were parties to any contract, actual or implied, with Dr. Crosby. Plaintiff's Amended Complaint states there was a "*de facto* contract by and between the University of Kentucky and Plaintiff Crosby." [DE 9, Ver. Am. and Sub. Compl., ¶ 79.] Plaintiff does not allege the individually named defendants were a party to this alleged "*de facto* contract." Thus, on the face of the Complaint, the breach of contract claim fails. Plaintiff makes the bizarre claim that

> [i]t is only the Defendants acting under color of State law. None of them were in the Federal Convention of 1787, or "parties" to the Federal Constitution, nor were they members of the 1868 Reconstruction Congress that drafted

the Fourteenth Amendment, nor are the "parties" to it, yet they, under color of State law, enforce those provisions, or as in this case, refuse to do so.

[Pl.'s Mem., p. 54, DE 16].

The Court is unable to follow Plaintiff's analogy and finds it wholly unpersuasive. The Court would apply plaintiff's own words to the above argument: "such a preposterous position cannot be countenanced by this Court, or any court." *Id.*

Additionally, Plaintiff's Complaint does not allege sufficient facts for the Court to draw the reasonable inference on a motion to dismiss that a contract, *de facto* or otherwise, existed with the University of Kentucky. Plaintiff acknowledges, by pleading breach of a *de facto* contract, that there was no written contract between the University and himself. He claims Governing Regulation, Part VII, KRS 164.225, and the un-enacted draft Governing Regulation XX somehow create a *de facto* contract for employment *as a department chair*. Plaintiff does not cite any law to support this proposition and the Court is not aware of any.

Accordingly, Defendants' motion to dismiss Plaintiff's contract claim will be granted.

## V. Conclusion

For the reasons stated above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Temporary Injunction [DE 1] is **DENIED AS MOOT;**

(2) Defendants' Motion to Dismiss [DE 4] is **DENIED AS MOOT;**

(3) Defendants' Motion to Dismiss [DE 12] is **GRANTED;**

(4) Plaintiff's Motion for Leave to File Oversized Memorandum [DE 15] is **GRANTED;** and

(5) Plaintiff's Motion for Hearing [DE 17] is **DENIED AS MOOT.**

This the 30th day of September, 2016.



**Signed By:**

*Joseph M. Hood*

**Senior U.S. District Judge**